## In re ROSENTHAL.

(Supreme Court, Appellate Division, First Department. April 15, 1910.)

1. ATTORNEY AND CLIENT (§ 53*)—OFFENSES BY ATTORNEY—DISBARMENT—SUFFICIENCY OF EVIDENCE.

　　In disbarment proceedings, evidence *held* sufficient to show that respondent knowingly forged the names of other attorneys, and embezzled the proceeds of a check given to him by his client.

　　[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. § 75; Dec. Dig. § 53.*]

2. ATTORNEY AND CLIENT (§ 44*)—DISBARMENT PROCEEDINGS—OFFENSES BY ATTORNEY.

　　Where an attorney defending a suit receives from his client a check payable to the plaintiff's attorneys for the amount on an alleged settlement between the parties, and signs the names of the attorneys to the check and deposits it in the bank to cover an overdraft, and subsequently draws against the amount left and the account is closed, he is guilty of both forgery and embezzlement, and is rightfully disbarred therefor.

　　[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. § 56; Dec. Dig. § 44.*]

---

For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Disbarment proceedings against Julius C. Rosenthal. Application to disbar granted.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

Einar Chrystie, for petitioner.

Charles Firestone, for respondent.

INGRAHAM, P. J. The association of the bar of the city of New York presented charges against the respondent. The question was referred to a referee (see 117 N. Y. Supp. 1146), who filed his report, and on that report the proceeding was submitted to this court. It appeared that on August 22, 1907, an action was commenced in the Municipal Court of the city of New York by Charles Porter as plaintiff against Samuel Levinson and another, defendants; that the plaintiff was represented by the firm of James, Shell & Elkus; that a judgment was entered against the defendants by default, when the respondent was about the middle of September, 1907, retained by the defendants and succeeded in having the default opened. The respondent interposed an answer for the defendants, and the case was set down for trial. Early in October the respondent endeavored to settle the case, and offered $250. This offer was declined, but the representative of the plaintiff's attorney stated that he would try to induce his client to settle for $300. Subsequently the respondent communicated with Samuel Levinson, one of the defendants, and told Levinson to send him $250 or $300, in response to which request Levinson sent or gave to the respondent two checks, one for $250 and one for $50, each check being drawn by the firm of Levinson, Bros. & Co., the defendants in the action, on the Fourteenth Street Bank, and were made payable to the firm of James, Shell & Elkus, the attorneys for the plaintiff in the action, and were given to the respondent by Levinson for the sole purpose of settling the action of Porter v. Levinson, and were made payable to the order of the attorneys for the plaintiff in that action. After the respondent had received these checks, he testified that he called Levinson on the telephone, and stated that the checks were drawn to the order of the attorneys for the plaintiff; that he (respondent) had not agreed upon a settlement; that it might be necessary to use $225 or $275, and said to Levinson, "What shall I do with the checks?" Levinson said, "Do as you please with them," and the respondent said, "I am going to deposit the checks, and will draw my check for whatever the settlement is," to which Levinson replied, "Don't care what you do." Levinson, who was called by the petitioner, stated that he delivered these two checks, drawn to the order of James, Shell & Elkus, to the respondent personally in consequence of a statement by the respondent to him that some one from James, Shell & Elkus was waiting in his office for the check for $300, and that, when he delivered the checks to the respondent, he told the respondent to obtain a receipt from James, Shell & Elkus for the checks, and that they were to be delivered in full payment of the settlement of the claim, but, when asked whether or not the respondent telephoned to him that the checks were drawn to the order of James, Shell & Elkus, and asked

what to do with the checks, the witness only replied, "I do not remember." He was then asked whether the respondent at any time told him that he (respondent) was going to deposit these checks and draw his own check, and he stated, "Not that I remember," and all that he would say was that he had no recollection of any such transaction, that the respondent did not, to his memory, tell him that he (respondent) had deposited these checks to his own account; and, while the testimony of this witness is not at all satisfactory, it is very evident that he was endeavoring to say as little against the respondent as he could. However that was, the respondent had in his possession these two checks, one for $250 and one for $50, drawn to the order of James, Shell & Elkus, to be used by him in the settlement of this lawsuit. Levinson, the client, testified expressly that he gave these checks to the respondent in his office in consequence of a statement by the respondent that the suit was settled, and that he required this money to be paid in settlement of it. Considering the circumstances and that this was in the midst of a severe panic in New York, this certainly is the most creditable account of the transaction. At this time the respondent had a bank account for his own individual use in the Columbia Bank. Prior to the 8th of October he seems to have had to his credit in that bank the sum of $84.85, and on the 8th of October there was a check charged against the account of $158, leaving the account considerably overdrawn. On the 8th of October the respondent took this check for $250, drawn to the order of James, Shell & Elkus, wrote on the back of it the name of James, Shell & Elkus and the name of A. S. & J. C. Rosenthal, the name in which this account with the Columbia Bank was kept, and deposited that in the Columbia Bank to his credit, thus using it to make good the overdraft, and a day or two subsequently he took the check for $50, and also wrote the name of James, Shell & Elkus on the back thereof and his own name below it, and deposited it in the same account. Subsequently, and during the month of December, the respondent drew out all the money in the bank for his own purposes, and on the 31st of December the account was closed.

The evidence is thus undisputed that the respondent procured this $300 by means of the forgery of these checks, and applied the money to his own use. After the respondent had procured the opening of the default in the action against Levinson and interposed an answer, the action was allowed to rest for some time, but in April James, Shell & Elkus moved the case for trial. The respondent then came to an agreement with the representative of James, Shell & Elkus for a settlement of the case, representing that it was difficult to obtain money, although, as he admits he had $300 of his client's money in his own possession, obtained for the very purpose of settling this case, he obtained an extension of the time of payment so that the $300 was to be paid, $100 on or about the 1st of May, $100 on or about the 1st of June, and $100 on or about the 1st of July. All this was done without any communication with his client; his client supposing that the checks had been applied to the settlement of the claim. When the first payment became due, it was not paid, when James, Shell & Elkus sent to the respondent, and said that they would have to issue execution

upon a judgment for $300 which had been entered at the time of settlement, unless the money was paid at once. On that day the respondent sent to James, Shell & Elkus $50 in bills, promising to pay the balance of the $100 in the afternoon of that day. He did not make such payment, and James, Shell & Elkus issued execution upon the judgment, which was levied upon Levinson's property. Levinson insisted upon it that the claim had been settled, but on producing the checks was informed that the name of James, Shell & Elkus had been forged, whereupon he paid the judgment, sent the checks back to the bank upon which they were drawn, and demanded that the bank credit his account with the amount upon the ground that the indorsement of the checks had been forged. That demand was acquiesced in, and the checks were sent by the Fourteenth Street Bank to the Columbia Bank, in which they had been deposited by the respondent, who also repaid the amount to the Fourteenth Street Bank, and then called on the respondent to make good these checks. That was subsequently done by the respondent's father or brother.

Upon this statement of facts, it was quite apparent that the defendant was guilty of the crime of forgery. Upon his own statement he had no authority from James, Shell & Elkus to whom the checks were made payable to indorse the checks with their name. He does not claim that he had any authority from Levinson, the maker of the checks, to indorse the name of James, Shell & Elkus. He says that he told Levinson that he was going to deposit the checks in his bank, and that Levinson said that he did not care what he did with them; but that could not be considered by any one a consent that he should forge the name of the payee of the check. Levinson only says that he does not remember any such conversation, but the situation shows plainly that Levinson never understood that he was giving to the respondent any authority to indorse the name of James, Shell & Elkus; for at once, when it appeared that the indorsement was forged, he held the bank upon which the checks were drawn liable upon a forged indorsement, and thus threw upon that bank the liability for the checks. But, even if it could be assumed that the respondent by some strange mental obliquity considered that he had a right to forge the name of James, Shell & Elkus to the checks, he had no right to appropriate the money to his own use. He received the checks solely for the purpose of settling this claim. He says the claim had not been settled, but his client evidently supposed it had been, as there was no necessity of giving him the $300 until a settlement had been arrived at; and certainly the checks would not have been drawn to the order of the plaintiff's attorney, except upon the supposition that they were to be turned over to the plaintiff's attorney for the purpose of procuring a settlement. Upon the respondent's own statement he received this $300 to settle the claim. He immediately obtained the money on the checks given for that amount by a forged indorsement, and then appropriated the money to his own use when the claim had not been settled, and when no money was required for that purpose.

Thus it would seem that the respondent was guilty of both forgery and embezzlement. It does not seem to have occurred to him that there was any impropriety in appropriating his client's money to his

own use, so that, when the time to pay it arrived, it was impossible for him to pay, but, by reason of this embezzlement of his client's money, he subjecting his client to an execution issued against him, and requiring him to repay the amount in order to avoid a levy upon his property. As is usual in cases of this kind, the respondent's youth is put forward as an excuse for these offenses, but any man, young or old, who is fit to be a member of the bar and intrusted with the responsibility and authority that the holding of such office confers, must certainly understand that forgery and embezzlement of his client's money are not to be considered as proper incidents in the practice of his profession. No lawyer could think for a moment that a statement over the telephone by the maker of a check that he did not care what the holder of the check did with it authorized him to forge the name of a third party to whom the check was made payable. While the maker of the check undoubtedly would have the right to change the name of the payee, so long as the check remained payable to the order of a third party, the signing of that third party's name to it without the consent, express or implied, of the third party, and when that is done for the purpose of obtaining the money to be misappropriated and applied to use of the person forging the name of the payee, whether with or without authority of the maker of the check, is unauthorized and a crime. We do not feel that we are justified in condoning such a serious offense, either because of the youth of the respondent or because of his financial necessities. The respondent has shown by the very fact that he would commit such an act that he has no appreciation of the obligation and duty of an attorney and counselor at law, and that he is not such a person as should be allowed to remain a member of the profession, and we are constrained to direct that he be disbarred.

The application will therefore be granted. All concur.